UNITED STATES DISTRICT COURT     JS-6
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-02303-DOC-(DFMx)        Date: March 12, 2021

Title: JANET YOON V. APPLIED UNDERWRITERS, INC., ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Kelly Davis | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING MOTION TO COMPEL ARBITRATION [10]**

Before the Court is Defendant Applied Underwriters, Inc.'s ("Defendant") Motion to Compel Arbitration ("Motion") (Dkt. 10). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the moving papers and considered the parties' arguments, the Court GRANTS the Motion.

**I.   Background**

   **A.   Facts**

The following facts are drawn from Plaintiff Janet Yoon's ("Plaintiff") First Amended Complaint ("Compl.") (Dkt. 8), Defendant's Motion to Compel Arbitration (Dkt. 10), Plaintiff's Opposition ("Opposition") (Dkt. 12), and Defendant's Reply ("Reply") (Dkt. 14). Plaintiff has filed a suit alleging discrimination and retaliation based on pregnancy, disability, and need for accommodation.

      **1.   Alleged Discrimination and Retaliation**

Defendant hired Plaintiff as a Workers' Compensation Litigation Attorney in March 2017. Compl. ¶ 17. According to Plaintiff, Defendant paid Plaintiff a $115,000 per

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA 20-02303-DOC-(DFMx)          Date: March 12, 2021
         Page 2

year salary, $500 monthly car allowance, reimbursement for vehicle maintenance fees, reimbursement for car insurance premiums up to $1,500 per year, and a gas card. *Id.*

On or about summer of 2019, Plaintiff gave Defendant notice of her pregnancy and planned delivery date. *Id.* ¶ 21. Plaintiff began her maternity leave on October 4, 2019, and her return to work date was on or about January 31, 2020. *Id.* ¶ 22. Plaintiff gave birth on November 23, 2019 and had complications that resulted in her inability to walk. *Id.* ¶ 23.

In early January 2020, Plaintiff had a neurology appointment with Dr. Jack Florin to address Plaintiff's ongoing disability. *Id.* ¶ 24. Dr. Florin extended Plaintiff's leave to February 3, 2020, and Plaintiff alleges that Dr. Florin's office sent all necessary paperwork of the extension to Defendant's benefits specialist, James Barnes. *Id.* ¶¶ 24-25. Plaintiff had a second appointment with Dr. Florin on January 23, 2020 who extended her leave to April 20, 2020. *Id.* ¶ 26. According to Plaintiff, Dr. Florin's office sent all necessary paperwork of this extension to James Barnes. *Id.* ¶ 27.

On March 4, 2020, Plaintiff sent an email to Defendant with gas receipts she had accumulated while out on maternity leave. *Id.* ¶ 28. In response, Defendant, emailed and called Plaintiff to inform her that her gas card privileges did not apply while she was out on leave. *Id.* ¶ 29. Plaintiff contends that she apologized to Defendant and explained that she believed her gas card could be used during leave because others working for Defendant used company gas cards during vacation time and Plaintiff regarded the gas card as a privilege of employment to be used regardless if Plaintiff was at work or on leave. *Id.* ¶¶ 30-31. According to Plaintiff, she emailed Defendant to repeat a request for the accommodation to temporarily cease her in-person court appearances until she returned to work, but Defendant did not respond to the request during the call. *Id.* ¶¶ 32-33.

Plaintiff contends that she cut and mailed a reimbursement check to Defendant for her gas expenses within an hour of the March 4, 2020 call. *Id.* ¶ 34. Two days later, Defendant terminated Plaintiff's employment. *Id.* ¶ 35. Plaintiff alleges that Defendant cited misuse of the company gas card while on leave as the reason for her termination. *Id.*

         **2.**      **Arbitration Provisions**

Plaintiff signed three arbitration agreements. Mot. at 6; Opp'n. at 6-7. Plaintiff contends that all agreements were a condition to her employment. Opp'n. at 13-14. On February 26, 2018, Plaintiff signed the first agreement entitled "Applicant's Statement & Agreement" ("Agreement 1"). Opp'n. at 6. Plaintiff contends that Annette Franco, a legal

Case 8:20-cv-02303-DOC-DFM   Document 20   Filed 03/12/21   Page 3 of 8   Page ID #:273

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SA 20-02303-DOC-(DFMx) | Date: March 12, 2021 |
| | Page 3 |

assistant, watched while Plaintiff signed Agreement 1. *Id.* According to Plaintiff, Agreement 1 consists of eight paragraphs, all in identical and miniscule font that is quite difficult to read. *Id.* On March 13, 2017, Plaintiff's first day of employment, she signed the other two arbitration agreements. *Id.* at 7. The second agreement is an untitled, single-page document containing three paragraphs in small font ("Agreement 2"). *Id.* The third agreement is entitled "California Employee Acknowledgment and Agreement" ("Agreement 3"). *Id.* This agreement, according to Plaintiff, is written in 11-point font, is two pages long, and consists of six paraphs. *Id.* The first paragraph acknowledges that the employee has received a copy of the company employee handbook and that employee will familiarize himself with its contents. *Id.* The arbitration provision is in the fourth of the sixth paragraphs, which is 47 lines long and lacks any indentation like Agreements 1 and 2, and has a long sentence spread out over 17 lines with legal jargon. *Id.*

According to Plaintiff, the three agreements are different. Opp'n at 9-10. Agreement 1 lists the Employment Arbitration Rules and Mediation Procedures of the AAA as the rules governing arbitration, where Agreements 2 and 3 list the California Arbitration Act. *Id.* at 10. Agreement 1 does not specify arbitration cost, where Agreement 2 states that arbitration costs will be allocated according to California Civil Procedure § 1284.2 or controlling case law, and Agreement 3 states the company will pay for costs above those one would pay in Superior Court. *Id.* Agreement 1 lists an arbitrator as the authority to resolve arbitrability disputes, where Agreements 2 and 3 list a court. *Id.* Agreement 1 provides the city containing the employer's primary place of business as the arbitration location, where Agreements 2 and 3 do not specify a location. *Id.* Agreements 1 and 2 are silent with regards to appeals for arbitration decisions, where Agreement 3 states that appeals are allowed to a second arbitrator. *Id.* Defendant does not contend the differences that Plaintiff highlights, rather Defendant asserts that the differences do not differentiate Agreements 2 and 3. Reply. at 7-8. Defendant also contends that Agreement 3 supersedes all prior agreements because Agreement 3 has an integration clause that states "[i]t supersedes all prior agreements, understandings and representations (whether written or oral) concerning my employment with the Company", and that Plaintiff certified this by signing Agreement 3. Mot. at Ex. C.

### B.  Procedural History

On December 1, 2020, Plaintiff originally filed suit in the Superior Court of California, Orange County, after obtaining a right to sue letter from the Depart of Fair Employment and Housing ("DFEH") on August 25, 2020. Opp'n. at 8. Defendant removed the action to this Court on December 7, 2020 (Dkt. 1). Plaintiff subsequently

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA 20-02303-DOC-(DFMx)          Date: March 12, 2021
         Page 4

amended her complaint on December 22, 2020 ("First Amended Complaint") (Dkt. 8). The First Amended Complaint alleges eleven causes of action:

(1) pregnancy discrimination (Government Code § 12940(a));
(2) pregnancy retaliation (Government Code § 12940(h);
(3) sex discrimination (Government Code § 12940(a));
(4) disability discrimination (Government Code § 12940(a));
(5) violation of California Family Rights Act (Government Code § 12945.2));
(6) failure to accommodate (Government Code § 12940(m));
(7) failure to engage in the interactive process (Government Code § 12940(n));
(8) failure to prevent discrimination and retaliation (Government Code § 12940(k));
(9) wrongful termination and retaliation in violation of public policy;
(10) conversion; and
(11) failure to reimburse expenses (Labor Code § 2802)

Compl. ¶¶ 38-179.

Defendant filed the instant Motion to Compel Arbitration (Dkt. 10) on January 4, 2021. On February 22, 2021, Plaintiff filed an opposition Brief (Dkt. 12), and Defendant replied on March 1, 2021 (Dkt. 14).

## II. Legal Standard

"[A]n agreement to arbitrate is a matter of contract." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[I]t is a way to resolve those disputes—but only those disputes—the parties have agreed to submit to arbitration." *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). The party seeking to compel arbitration "bears 'the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.'" *Norcia v. Samsung Telecoms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). Before ordering arbitration, a court must determine whether a contract agreement falls within the ambit of Federal Arbitration Act § 1, which exempts contracts of employment for certain class of transportation workers from arbitration. *New Prime Inc. v. Oliveria*, 139 S. Ct. 532, 534 (2019). Arbitration agreements may be invalidated by "'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT & T*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SA 20-02303-DOC-(DFMx) | Date: March 12, 2021 |
| | Page 5 |

*Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Zaborowski v. MHN Government Serv., Inc.*, 936 F. Supp. 2d 1145, 1150 (2013).

### III. Discussion

Defendant moves to compel arbitration in this action. Defendant contends that Plaintiff must arbitrate claims in accordance with the Federal Arbitration Act and in conformity with procedures of the California Arbitration Act. Mot. at 9

Plaintiff challenges the validity of the Arbitration Agreement on two bases—first, by asserting that no contract exists under state law and second, that the agreements are unconscionable. *See generally* Opp'n.

#### A. Arbitration Agreement

Courts must determine the validity of an arbitration agreement as a matter of contract. *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648-49 (1956). State law governing contract formation determines whether an agreement to arbitrate is valid. *See, e.g., Perry v. Thomas*, 482 U.S. 483, 493 (1987) ("state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally"); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (federal courts should apply ordinary state-law principles that govern contract formation). Under California law, it is essential to the existence of a contract that there should be: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration. Cal. Civ. Code § 1550.

Here, Plaintiff contests the consent element of the contract between him and Defendant. Opp'n. at 9. Defendant supports the consent element through documentation that Plaintiff signed the Arbitration Agreements. Declaration of Joan Sheppard ("Sheppard Decl.") Ex. A, Ex. B, Ex. C. Plaintiff does not contest that she signed the agreements, rather Plaintiff asserts that the agreements are not valid because even if she signed the agreements there was no mutual assent since there were multiple arbitration agreements. Mot. at 9. While there are multiple arbitration agreements, Agreement 3 has an integration clause that states this agreement supersedes all other agreements. Shepard Decl. Ex. C. Because Plaintiff signed Agreement 3 and the integration clause means that Agreement 3 is the binding arbitration agreement of the three, the Court holds that there is valid arbitration agreement.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---:|
| Case No. SA 20-02303-DOC-(DFMx) | Date: March 12, 2021 |
| | Page 6 |

### B. Unconscionability

Next, Plaintiff argues that even if the Court determines that she did execute an agreement to arbitrate any and all claims against Defendant, the agreement should not be enforced because it is unconscionable. Opp'n. at 11-17. Plaintiff supports her contention by arguing that the arbitration agreements are procedural unconscionable because they are contracts of adhesion, each agreement's physical characteristics demonstrates significant surprise, and the presentation of the agreements indicate oppression. *Id.* at 12-16. Further, Plaintiff asserts that the agreements are substantially unconscionable because the font is small, agreements are inconsistent with one another, and Defendant could modify agreements at any time without notice. *Id.* at 16-17. Defendant responds that the arbitration agreements are not unconscionable. *See generally* Reply. Defendant contends that there is no procedural unconscionability because there is no surprise in the agreements nor oppression towards Plaintiff. *Id.* at 10-12. Defendant further asserts that there is no substantive unconscionability because the agreements are not overly harsh or one sided. *Id.* at 13-14.

The Court only examines Agreement 3 for unconsibiality because it is the only binding arbitration agreement. As previously stated, Agreement 3 has an integration clause that supersedes all prior agreements between Plaintiff and Defendant.

California courts analyze contract provisions for both procedural and substantive unconscionability. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006). The procedural unconscionability analysis focuses on "'oppression' or 'surprise.'" *Id.* (citing *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice," while "[s]urprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Flores*, 93 Cal. App. 4th at 853. "An arbitration provision is substantively unconscionable if it is "overly harsh" or generates "one-sided results." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th at 114 (200) (internal citations omitted). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 114. However, both procedural and substantive unconscionability must be present in some degree for a contract to be unenforceable. *Id.*

A procedural unconscionability analysis "begins with an inquiry into whether the contract is one of adhesion." *Armendariz*, 24 Cal.4th at 113. An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA 20-02303-DOC-(DFMx)                                                  Date: March 12, 2021
                                                                                                                           Page 7

bargaining power "on a take-it-or-leave-it basis." *Baltazar v. Forever 21, Inc.* 62 Cal.4th 1237, 1245; *see Armendariz*, 24 Cal.4th at 113. Arbitration contracts imposed as a condition of employment are typically adhesive. *see Armendariz*, 24 Cal.4th at 114-115; *see also Serpa v. California Surety Investigations, Inc.*, 215 Cal.App.4th 695, 704 (2013). 155 Cal.Rptr.3d 506).

      Here, Agreement 3 can be regarded as a contract of adhesion because it was a condition of Plaintiff's employment. *See* Shepard Decl. ¶ 6 (identifying Agreement 3 as "document sett[ing] forth terms and conditions required of all applicants and employees as condition of their employment and application").

      "The pertinent question, then, is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *Otto, LLC v. Kho*, 8 Cal. 5th 111, 127 (2019)*; see Baltazar*, 62 Cal.4th at 1245-1246; *see also Farrar v. Direct Commerce, Inc.*, 9 Cal.App.5th 1257, 1267-1268 (2017).

      "The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney. G*rand Prospect Partners, L.P. v. Ross Dress for Less, Inc*., 232 Cal.App.4th 1332, 1348 (2015).

      Here, the circumstances surrounding Plaintiff's acceptance of Agreement 3 do not establish oppression. In *Otto,*the court held that circumstances surrounding the arbitration agreement were oppressive because the plaintiff felt that there was an urgency to sign the forms since a porter waited around until forms were signed; the plaintiff did not feel that he had time to consult an attorney; the contents nor the significance of the agreement were explained; and a low-level employee, a porter, presented the plaintiff with the agreement. 8 Cal. 5th at 127. Here, unlike in *Otto*, the amount of time Plaintiff was given to consider Agreement 3 was not oppressive because she had the whole day to review the agreement and pressure of immediacy was not created by an employee waiting on Plaintiff to sign the agreement. Reply at 12. Rather, the employee who presented Plaintiff with Agreement 3, Tyna DeMiller ("Ms. DeMiller"), declared that she would check-in on Plaintiff, asked Plaintiff if she had questions regarding Agreement 3, and emphasized that there was no rush to sign the agreement. Declarationof Tyna DeMiller ("DeMiller Decl") ¶¶ 5-6. Additionally, Plaintiff is an attorney capable of reviewing the agreement. Compl.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SA 20-02303-DOC-(DFMx) | Date: March 12, 2021 |
| | Page 8 |

¶ 17. Therefore, the Court holds that there is no oppression in the circumstances surrounding Plaintiff's acceptance of Agreement 3.

Moreover, surprise occurs where "the allegedly unconscionable provision is hidden within a prolix printed form." *Pinnacle Museum Tower Assn. v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012).

The physical characteristics of Agreement 3 do not demonstrate significant surprise. In *Otto*, the court held that there was oppression because a lay person would have difficulty navigating the block of text with tiny writing that included complex sentences filled with statutory references and legal jargon. 8 Cal. 5th at 128. Here, unlike in *Otto*, Plaintiff is not a layperson, but an attorney. *See* Compl. ¶ 17. The text of Agreement 3 is also not tiny like Agreements 1 and 2 that Plaintiff takes issue because Plaintiff identifies Agreement 3 as having 11-point font in comparison to the 6-point font Plaintiff identifies in Agreements 1 and 2. *See* Opp'n. at 7. Moreover, the signature page of Agreement 3 contains bold text that indicated to Plaintiff that she was signing an arbitration agreement, and Plaintiff certified that she read the entire agreement. Sheppard Decl. Ex. C. Consequently, the Court holds that there is no surprise in the physical characteristics of Agreement 3.

Because the Court concludes that the factors of oppression and surprise are not present, the Court holds that Agreement 3 is not proceduraly unconscionable. Thereby, Agreement 3 is not unconscionable because procedural unconscionability is lacking.

## IV.  Disposition

For the reasons stated above, the Court GRANTS Defendant's Motion to Compel Arbitration. The Court STAYS this case. This case is hereby administratively closed. Defendant is ORDERED to file a status report on arbitration proceedings **every three months** from the date of this order, and within **fourteen (14) days** of the conclusion of any challenges to arbitrability brought before the arbitrator.  The scheduling conference set for March 15, 2021 is VACATED.

The Clerk shall serve this minute order on the parties.

Initials of Deputy Clerk: kd

MINUTES FORM 11
CIVIL-GEN